File # 20-21833- September 1, 2020 – JJB
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO AT DAYTON
## WESTERN DIVISION

| | | |
|---|---|---|
| WILD GOOSE ENTERPRISES, INC. | : | Case No. 3:20-CV-00340 |
| Plaintiff | : | Judge Thomas M. Rose |
| v. | : | |
| IRON FLAME TECHNOLOGIES, INC. | : | **FIRST AMENDED COMPLAINT** |
| Defendants | : | |

Now comes Plaintiff, Wild Goose Enterprises, Inc. ("Plaintiff"), by and through its undersigned counsel, and states as follows for its First Amended Complaint against Defendant, Iron Flame Technologies, Inc. ("Defendant"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is an Ohio corporation, with its principal place of business located at 1190 Woodland Meadows Drive, Vandalia, Ohio.

2. Defendant is a Delaware corporation, with its principal place of business located at 111 South Calvert Street, Suite 1806, Baltimore, Maryland.

3. The parties agree that Delaware law will govern any disputes arising from the foregoing facts.

## FACTS

4. On January 12, 2017, Plaintiff and Defendant entered into a contractor/subcontractor agreement (the "Contract"), with Plaintiff's services to continue through March 26, 2022. The most recent version of the Contract is attached hereto as **Exhibit A**.

5. Under the agreement, Plaintiff was designated as the "subcontractor", and Defendant was designated the "prime contractor," at the time operating under the name "The Nasir Group of Washington D.C."

6. The agreement and services provided by Plaintiff, designated as "Consultants," were part of a larger project involving a contract between Defendant and the United States Air Force. Plaintiff provided its services in Dayton, Ohio, on or near the Wright-Patterson Air Force Base.

7. Plaintiff's duties were, amongst others, to assist Defendant in migrating current software baselines to meet Federal Data Center Consolidation Initiative guidelines; to develop authentication processes for users; to develop additional functionality requirements; to refactor database components to optimize maintainability and speed of processing; to develop performance metric collection for inbound and outbound data files; and to sustain and maintain fielded baselines for the Defendant.

8. Through bilateral agreement, Plaintiff and Defendant twice executed updated, written contracts, with the most recent agreement dated March 19, 2020. Both of these updated agreements reduced the compensation that was to be paid to Defendant.

9. For the years of 2017 through 2019, in part, Plaintiff was provided compensation as follows:

    Base Year: $1,360,488.00
    Year One:  $1,373,640.00
    Year Two: $1,371,009.60

10. For years Three and Four of the Contract, Defendant was obligated to pay Plaintiff $1,108,114.15 per year in 1/12 increments.

11.     On May 15, 2019, Defendant sent an email communication directly to three of Plaintiff's employees, Randy Brooks, Mike Kender, and John Covey, claiming that the three employees' "best option is to become consultants to Iron Flame." *See* **Exhibit B**.

12.     All three employees understood the emails to be a solicitation of employment made to them by Defendant and reported the solicitation to Plaintiff.

13.     On May 15, 2019, Plaintiff responded to Defendant, stating that Defendant's request to have three of Plaintiff's employees "become consultants to Iron Flame" was in violation of provision 13 of the Contract. *See* **Exhibit B**.

14.     On May 16, 2019, Defendant disputed, via email, that it had attempted to solicit Plaintiff's employees, claiming that it had "no interest." *See* **Exhibit B**.

15.     On June 2, 2020, Defendant sent an email to Plaintiff, informing Plaintiff that it had unilaterally decided to move all roles associated with the project to Baltimore, Maryland, and that Plaintiff had to transition all of its employees, equipment, and services to Maryland by June 30, 2020. *See* **Exhibit C**.

16.     Up and until June 2, 2020, all of Plaintiff's operations and services for Plaintiff had been performed in Ohio, and at no point did the parties negotiate or even discuss the possibility of Plaintiff's operations moving to Baltimore, Maryland.

17.     On June 2, 2020, Plaintiff responded to Defendant's unilateral demand, asked for clarification, and indicated that moving Plaintiff's operations to Maryland would necessarily cause Plaintiff to incur a great deal of additional costs and expenses (which were not included in the contract), cause issues regarding the movement of Plaintiff's employees and their families (which would be complicated by the current COVID-19 crisis), and delay the completion of the project. *See* **Exhibit D**.

18. On June 2, 2020, Defendant reiterated its demand to Plaintiff, stating that Plaintiff's staff would be required to perform their duties under the Contract in Baltimore, Maryland, and that a "time schedule" for migrating portions of the test and development environments were required by "COB" three days later on June 5, 2020. Defendant provided no explanation of its demand for this move to Maryland to Plaintiff. *See* **Exhibit C**.

19. On June 4, 2020, Plaintiff informed Defendant that the scope and location change would be a modification of the Contract, which would have to conform to provision 21 of the Contract in order to bind the parties. Plaintiff again informed Defendant the scope and location change would adversely affect Plaintiff, causing additional costs and inconvenience associated with moving the entire families of Plaintiff's employees to Maryland (if the employees would even agree to move, and if not, the cost and time that would be needed to be put into finding and training replacements), and would likely delay completion of the project by at least 4-6 weeks. *See* **Exhibit C**.

20. On June 9, 2020, Plaintiff's counsel sent a letter to Defendant, again reiterating that any changes to the agreement would have to be pursuant to provision 21 of the Contract, and that Defendant's position on the scope and location change amounted to unauthorized, unilateral demand in direct violation of the terms of the Contract. *See* **Exhibit E**.

21. On June 12, 2020, Defendant issued Plaintiff a "stop work" order, effective the same day, claiming that Plaintiff could not "devote full-time efforts during the hours of operation and other professional considerations." *See* **Exhibit F**.

22. Plaintiff remained willing and able to complete its portion of the contract, and there was no reason that it could not complete its work in the state of Ohio. On June 12, 2020, Plaintiff issued a cure notice to Defendant in response to the "stop work" order. *See* **Exhibit G**.

23. Defendant did not respond to the cure notice within the 10-day period mandated by the Contract, and Plaintiff thereafter brought the instant action.

### COUNT I - BREACH OF CONTRACT

24. Plaintiff incorporates the foregoing allegations as if fully restated herein.

25. Plaintiff entered into a Contract with Defendant on January 12, 2017, with the most recent written and mutually agreed upon modification occurring on March 19, 2020.

26. Plaintiff performed under the Contract by rendering services as contemplated by the Contract with Defendant for over three years.

27. Defendant materially breached the Contract as a result of its attempt to solicit consulting services from Plaintiff's employees on May 15, 2019, as set forth in detail herein.

28. Defendant materially breached the Contract as a result of its attempt to unilaterally impose scope and location changes to Plaintiff's operations, beginning on June 2, 2020, and culminating with a "stop work" order issued on June 12, 2020, as set forth in detail herein.

29. Defendant materially breached the Contract by failing to respond to Plaintiff's cure notice within 10 days of June 12, 2020 as required per provision 15 in the Contract.

30. As a result, Plaintiff has been damaged as a direct result of Defendants breach of contract, including but not limited to damages as set forth throughout this Amended Complaint, in excess of $75,000 in an amount to be determined at trial.

### COUNT II - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

31. Plaintiff incorporates the foregoing allegations as if fully restated herein.

32. Defendant breached the implied covenant of good faith and fair dealing by engaging in oppressive, underhanded tactics designed to frustrate the ability of Plaintiff to perform under the Contract.

33. Defendant's actions systematically undermined Plaintiff's business operations, beginning with its heavy-handed negotiations to amend the agreement between the parties and reduce the compensation that was to be paid to Defendant, followed by it attempting to appropriate Plaintiff's key personnel in violation of the agreement, and culminating in Defendant's unilateral, unreasonable, and unnecessary demand to move the location of Plaintiff's business operations out-of-state.

34. Defendant's attempts to impose scope and location changes upon Plaintiff's business operations, along with its attempts to procure Plaintiff's employees as "consultants," were a conscious artifice by Defendant calculated to impair Plaintiff's ability to perform its duties under the contract. These actions were employed by Defendant to attempt to force Plaintiff into breaching the parties' contract.

35. Plaintiff has been damaged as a direct result of Defendant's actions in excess of $75,000 in an amount to be determined at trial.

WHEREFORE, Plaintiff demands relief against Defendant, Iron Flame Technologies, Inc., for breach of contract and compensatory damages, in a fair and reasonable amount to be determined at trial, exceeding this Court's minimum jurisdictional limits, pre- and post-judgment costs, and interest, and all other relief to which Plaintiff may be entitled.

Respectfully submitted,

**/s/ James J. Birch, Esq.**
James J. Birch, Esq. (0092767)
Rolfes Henry Co., LPA
600 Vine Street, Suite 2600
Cincinnati, Ohio 45202
T:  (513) 579-0080
F:  (513) 579-0222
jbirch@rolfeshenry.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Amended Complaint was served this 5th day of October, 2020, via the Court's CM/ECF System, upon the following:

Reuel D. Ash, Esq.
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
*Attorney for Defendant, Iron Flame Technologies, Inc.*

                                              **/s/ James J. Birch, Esq.**
                                              James J. Birch, Esq.